**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ANTHONY BROWN, JR., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 09-CV-0686-CVE-PJC |
| | ) |
| JAMES RUDEK, Warden, | ) |
| | ) |
| Respondent. | ) |

**OPINION AND ORDER**

Before the Court is the 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 2) filed by Petitioner Anthony Brown, Jr., a state prisoner appearing through counsel. Petitioner also filed a brief in support of his petition (Dkt. # 8). After the Court denied Respondent's motion to dismiss for failure to exhaust state remedies, see Dkt. # 15, Respondent filed a response to the petition (Dkt. # 19), and provided the state court record necessary for resolution of Petitioner's claims (Dkt. ## 19, 20, 21). Petitioner did not file a reply. For the reasons discussed below, the petition for writ of habeas corpus shall be denied.

*BACKGROUND*

In the Opinion and Order denying Respondent's motion to dismiss, filed January 3, 2011 (Dkt. # 15), the Court summarized the procedural background relevant to Respondent's motion. That background shall be repeated here and expanded with additional information.

Around 3:00 a.m. on January 19, 2007, Kimberly Sanders called Petitioner and asked him to pick her up from work because the roads were icy and she had been drinking. Petitioner borrowed a car from a friend and drove to pick up Ms. Sanders. On the way home, the car was stopped by Tulsa County Sheriff's deputies for a traffic violation. One of the deputies detected an odor of

marijuana in the car. Upon further investigation, a gun was found under the driver's seat and remains of a marijuana blunt were found in the ashtray. In addition, two baggies of drugs were found on Ms. Sanders' person. It was determined that one baggie contained marijuana, and the other contained 8.24 grams of cocaine base (rock cocaine). Petitioner admitted at the scene that the drugs were his, and not Ms. Sanders'.

In addition to various traffic violations, Petitioner was charged in Tulsa County District Court, Case No. CF-2007-409, with Trafficking in Illegal Drugs, After Former Conviction of Two or More Drug-Related Felonies (Count 1); Possession of a Firearm After Former Felony Conviction (Count 2); and Unlawful Possession of Marijuana, second offense (Count 3). He was tried by a jury in a single stage trial. The jury found Petitioner not guilty of Counts 2 and 3. On Count 1, the jury found Petitioner guilty of the lesser included offense of Unlawful Possession of a Controlled Dangerous Substance (Cocaine Base), After Two or More Prior Felony Convictions. The trial court judge sentenced Petitioner to life imprisonment on Count 1, in accordance with the jury's recommendation. Petitioner was represented at trial by attorney Brian Martin.

Petitioner perfected a direct appeal in the Oklahoma Court of Criminal Appeals (OCCA). Represented on appeal by attorneys Jack A. Martin and Gerald J. Lovoi, Petitioner raised seven (7) propositions of error, as follows:

> Proposition I    Trial court erred in failing to exclude alleged statements illegally obtained and presented at trial and the State presented insufficient evidence to support a conviction for unlawful possession of a controlled dangerous substance in violation of the due process clause of the Federal and state constitutions by basing a conviction on circumstantial evidence not excluding other reasonable hypothesis.
>
> Proposition II   The State conducted such misconduct in concealing required exculpatory information production from the defense as well as a failure to disclose that state witness Kimberly Sanders' testimony

|               |                                                                                                                                                                                                                                                                                                                                    |
| ------------- | ---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|               | was exchanged for favorable treatment by the State as to result in such extreme prejudice as to deny the Appellant his due process rights to a fair trial.                                                                                                                                                                         |
| Proposition III | The court erred in allowing the introduction of alleged voluntary statements attributed to the Appellant by accomplice Kimberly Sanders without proper instruction and when such testimony was clearly impeached, found inherently contradictory, and unbelievable resulting in a fatal prejudice to Appellant, denying him due process and a verdict based on less than guilt beyond a reasonable doubt. |
| Proposition IV | The trial court committed reversible error by misstating the law in giving its instruction to the jury as to determining when corroboration by accomplice is sufficient. |
| Proposition V | The court erred in not sustaining a directed verdict of not guilty as to the charge of unlawful possession of a controlled dangerous substance and unlawful possession of marijuana, second offense as to the Appellant in the face of admissions by Ms. Sanders, lack of evidence against the Appellant, and impeachment of the State's evidence which refuted a finding of the essential elements of the crime beyond a reasonable doubt. |
| Proposition VI | Defense trial counsel provided ineffective assistance of counsel by failing to subject critical evidence potentially determinative of guilt or innocence to forensic testing, segregate the trial and sentencing phases of the trial, subject the prosecutorial evidence and witnesses to meaningful adversarial testing, and other cumulative errors prejudicing the Appellant. |
| Proposition VII | Trial errors and prosecutorial misconduct cumulatively denied Mr. Brown his right to due process and a fundamentally fair trial. |

See Dkt. # 19, Ex. 1. By Order filed July 25, 2008, the OCCA rejected the claims and affirmed the judgment and sentence of the trial court. (Dkt. # 19, Ex. 3). Petitioner did not seek certiorari review from the Supreme Court nor did he seek post-conviction relief in the state courts.

On October 23, 2009, Petitioner, represented by attorney Richard Scott Adams, filed his federal petition for writ of habeas corpus. He raised six (6) grounds of error, as follows:

3

Ground 1:   Statements introduced in violation of *Miranda*.[1]

Ground 2:   The evidence was insufficient to sustain the conviction.

Ground 3:   The State failed to divulge exculpatory evidence in violation of *Brady*.[2]

Ground 4:   The jury instruction regarding corroboration by accomplice testimony was faulty.

Ground 5:   Defense trial counsel provided ineffective assistance of counsel by failing to subject critical evidence potentially determinative of guilt or innocence to forensic testing, segregate the trial and sentencing phases of the trial, subject the State's evidence and witnesses to meaningful adversarial testing, and other cumulative errors resulting in prejudice to Brown.

Ground 6:   The cumulative effect of the errors in this case deprived Brown of his constitutional right to a fundamentally fair trial.

(Dkt. # 2). In his brief (Dkt. # 8), filed January 21, 2010, Petitioner offers supporting argument for the six claims raised in the habeas petition. In response, Respondent asserts that Petitioner's claims are not cognizable in this habeas proceeding, or do not justify habeas relief under 28 U.S.C. § 2254(d). See Dkt. # 19.

## *ANALYSIS*

**A.   Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c). See Rose v. Lundy, 455 U.S. 509, 510 (1982).

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966) (finding that statements made by a defendant during custodial interrogation could not be used at trial unless the defendant was first advised of his right to remain silent, his right to an attorney, and that his statements may be used against him).

[2] Brady v. Maryland, 373 U.S. 83 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

4

Petitioner fairly presented the substance of his claims to the OCCA on direct appeal. Therefore, the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. See Williams v. Taylor, 529 U.S. 420 (2000).

**B.      Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.[3] Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S.

---

[3] Before delving into the arguments supporting his specific habeas corpus claims, Petitioner challenges the constitutionality of the AEDPA. See Dkt. # 8 at 9-11. He claims that the "deference" provision of 28 U.S.C. § 2254(d) is an intrusion by Congress on the judicial branch of government in violation of the separation of powers doctrine and urges the Court to review his constitutional claims de novo. See id. However, the United States Supreme Court has explained that "[w]hatever 'deference' Congress had in mind . . . , it surely is not a requirement that federal courts actually defer to a state-court application of the federal law that is, in the independent judgment of the federal court, in error." Williams v. Taylor, 529 U.S. 362, 387 (2000). The Court summarized the application of AEDPA review standards as follows: "the statute directs federal courts to attend to every state-court judgment with utmost care, but it does not require them to defer to the opinion of every reasonable state-court judge on the content of federal law." Id. at 389. In Harrington v. Richter, 131 S. Ct. 770 (2011), the Court explained that "[u]nder § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786. As made clear in Williams and Harrington, habeas corpus review under § 2254(d) does not unconstitutionally mandate that federal courts "defer" to state court decisions on questions of federal law. Therefore, the Court shall deny Petitioner's request for de novo review and shall apply the § 2254(d) standard to review of Petitioner's constitutional claims.

5

362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As indicated above, Petitioner presented his federal claims challenging his conviction and sentence to the OCCA on direct appeal. The OCCA denied relief. See Dkt. # 19, Ex. 3. Therefore, the § 2254(d) standard applies to this Court's analysis of Petitioner's claims.

### 1. Miranda violations (ground 1)

In his first ground for relief, Petitioner contends that two of his statements were improperly admitted at trial in violation of his rights under Miranda. The first challenge involves Petitioner's statement "[t]hat's not hers, that's mine," made after baggies of cocaine and marijuana were found on the person of Kimberly Sanders. See Dkt. # 21-2, Tr. Trans. Vol. II at 160. This statement was made prior to the Miranda warning. The second statement was made after Petitioner was read his Miranda rights. Id. at 118. One of the arresting officers testified that Petitioner voluntarily admitted that he handed the cocaine to his passenger, Ms. Sanders, when he saw the deputy's flashing lights prior to the traffic stop. Id. The OCCA found no violation of Miranda in the admission at trial of either statement. Respondent asserts that the OCCA's finding was not an unreasonable application of Supreme Court law. See Dkt. # 19 at 4.

6

### a. Voluntary statement made before Miranda warning

After finding a gun in the car, Deputy Schaefer directed both Petitioner and Ms. Sanders to get out of the car. They were both placed in handcuffs for "officer safety." Dkt. # 21-2, Tr. Trans. Vol. II at 158. As Deputy Schaefer began a pat down search of Ms. Sanders, she informed him that she had something in her right front pocket. Id. at 159. He took two baggies from her pocket, one containing "white chunks," and the other containing marijuana. Id. When he placed the two baggies on the hood of the car, Petitioner made his incriminating statement that they were his. Id. at 160. Petitioner admits that the statement was not made in response to a direct question, but claims it was a product of a previous interrogation when Deputy Schaefer asked him if there was marijuana in the car. See Dkt. # 8 at 13-14.

In rejecting this claim, the OCCA found that the trial court did not err in admitting Petitioner's statement that the drugs were his, not Ms. Sanders', because he made this "incriminating statement spontaneously." See Dkt. # 19, Ex. 3 at 3. To determine whether a statement is spontaneous, the question is whether the statement was made in response to express police questioning or its functional equivalent. Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980). The functional equivalent of express questioning refers to any words or actions, other than those normally attendant to arrest, that the police should know are reasonably likely to elicit an incriminating response. Id. at 301. Petitioner's statement was made while he was standing by Deputy Hess, but was in response to actions by Deputy Schaefer in removing the drugs from Ms. Sanders' pocket. Petitioner has failed to show that his statement was not spontaneous, or that it was made in response to either of the deputies' questioning or the functional equivalent of express questioning.

7

Because Petitioner has not demonstrated that the OCCA's ruling was an unreasonable application of Supreme Court law, he is not entitled to relief on this portion of his ground one claim.

### b. Incriminating statement made after Miranda warning

Petitioner's second statement, that he had handed the baggie containing cocaine to Ms. Sanders when he realized he was being stopped by police, was made in response to custodial questions after a proper Miranda warning was given. Prior to admission at trial of Petitioner's post-Miranda statement made to Deputy Hess and Deputy Schaefer, the trial court conducted a Jackson v. Denno[4] hearing outside the presence of the jury. See Dkt. # 21-2, Tr. Trans. Vol. II at 84-104. The trial court found that under the totality of the circumstances, the statement made by Petitioner to the two deputies was voluntarily given in compliance with Miranda. Id. at 103-04.

In rejecting Petitioner's claim regarding the voluntariness of his statement to Deputy Hess, the OCCA found that the statement was properly admitted into evidence because Petitioner verbally waived his Miranda protections. Dkt. # 19-3 at 3. Petitioner argues that his second confession was inadmissible because it came on the heels of an involuntary confession. Dkt. # 8 at 14. He contends that it was tainted by the first Miranda violation. Id. Respondent asserts that because the OCCA's rejection of this claim on direct appeal is not an unreasonable application of the facts in evidence or contrary to Supreme Court precedent, § 2254(d) prevents the granting of federal habeas relief on this issue.

The Fifth Amendment provides that no person shall be compelled in any criminal case to be a witness against himself. In Miranda, the Supreme Court concluded that, "without proper

---

[4] Jackson v. Denno, 378 U.S. 368, 376 (1964) ("A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined.").

8

safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." Miranda, 384 U.S. at 467. The Court admonished that "any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege." Id. at 476. It is well settled that the Miranda warning is a constitutional requirement adopted to reduce the risk of a coerced confession and to implement Fifth Amendment protections. Dickerson v. United States, 530 U.S. 428, 444 (2000). "The purposes of the safeguards prescribed by Miranda are to ensure that the police do not coerce or trick captive suspects into confessing, to relieve the 'inherently compelling pressures' generated by the custodial setting itself, 'which work to undermine the individual's will to resist,' and as much as possible to free courts from the task of scrutinizing individual cases to try to determine, after the fact, whether particular confessions were voluntary." Berkemer v. McCarty, 468 U.S. 420, 433 (1984) (internal citations and footnotes omitted). However, the Berkemer Court observed that, "cases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of Miranda are rare." Id. at n.20. After being advised of his Miranda rights, an accused may himself validly waive his rights by an express statement that he is willing to make a statement. North Carolina v. Butler, 441 U.S. 369, 374 (1979).

Although Petitioner testified at trial that the sheriff's deputies urged him to admit the drugs were his so that Ms. Sanders could go free, see Dkt. # 21-2, Tr. Trans. Vol. II at 254; Dkt. # 21-3, Tr. Trans. Vol. III at 6, the jury clearly did not believe his version of why he admitted the drugs were his. Deputy Hess testified that, as soon as Petitioner voluntarily claimed that the drugs placed on the

hood of the car belonged to him, he read Petitioner's Miranda rights to him. See Dkt. # 21-2, Tr.

Trans. Vol. II at 116-117. Deputy Hess continued his testimony, as follows:

> Q: Why did you read him his Miranda warnings after he'd made this statement about the drugs?
>
> A: Because I did not want him to make anymore statements without him being aware of his rights.
>
> Q: And when you read him his Miranda warnings, did he appear to you to understand the warnings?
>
> A: Yes, sir.
>
> Q: And did he make a choice about whether or not to speak with law enforcement after those warnings?
>
> A: Yes, he did.
>
> Q: And what choice did you observe that he made?
>
> A: He said he would talk to us.
>
> Q: Now, were you present when he was asked about these items that he'd claimed earlier?
>
> A: Yes, I was.
>
> Q: And what did you hear him say about that?
>
> A: He said that when the officer turned his lights on, that he handed the baggie of white rocks, that -- he called it cocaine -- "I handed the coke over to the lady, to the girl next to me."

Id. at 118-19. Deputy Schaefer also testified that Petitioner volunteered a statement concerning the

drugs after he was read his Miranda rights. Deputy Schaefer confirmed the following:

> Q: How did you see Deputy Hess deliver the Miranda warnings to the Defendant?
>
> A: Off a card out of his pocket.

Q: And was the Defendant -- Did you watch to see whether or not the Defendant was paying attention or understood his rights?

A: Yes.

Q: And from what you saw, did it appear to you that the Defendant understood his Miranda rights?

A: Yes.

Q: And do you know whether or not, after the Defendant was read his Miranda rights, he made a statement to you and Deputy Hess?

A: Yes, he did.

Q: Do you remember what that statement was, in regard -- I mean, after he'd been read his Miranda rights?

A: Yes.

Q: And what was the statement?

A: He advised me again that that wasn't hers, it was his.

Q: And did he tell you, during this statement, when he had given it to Mrs. Sanders -- Miss Sanders?

A: Yes, after he -- I asked him, and he told me that whenever I turned on my lights, he had passed it to her.

Q: Now, is that the same thing that Sanders told you?

A: Yes.

Id. at 166-67. The Court finds no evidence, other than Petitioner's self-serving testimony at trial, that his admission that the drugs were his was improperly induced by the arresting officers.

The Court concludes that Petitioner's explicit statement that he would talk to the officers was a voluntary, knowing, and intelligent waiver of his right to remain silent. Because Petitioner voluntarily waived his right to remain silent, the admission of his confession at trial was not a

constitutional violation. Further, nothing in the record suggests that Petitioner's statements were coerced in violation of the Due Process Clause. Therefore, the Court agrees with the OCCA's resolution of this claim. Petitioner has failed to satisfy his burden under 28 U.S.C. § 2254, and he is not entitled to habeas relief on this issue.

### 2.     Insufficient evidence (ground 2)

In his second ground for relief, Petitioner argues that the state presented insufficient evidence to support his conviction for Unlawful Possession of a Controlled Dangerous Substance. In his supporting brief, Petitioner argues that the State's case against him was entirely circumstantial and based upon the "bought-and-paid for testimony" of Ms. Sanders. Dkt. # 8 at 15. Citing Spuehler v. State, 709 P.2d 202 (Okla. Crim. App. 1985), the OCCA found that the evidence was sufficient to support Petitioner's conviction because, "[a]ny rational trier of fact [could] find Appellant possessed a controlled dangerous substance beyond a reasonable doubt." Dkt. # 19, Ex. 3 at 3.

In a habeas proceeding, the Court reviews the sufficiency of the evidence "in the light most favorable to the prosecution" and asks whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "This standard of review respects the jury's responsibility to weigh the evidence and to draw reasonable inferences from the testimony presented at trial." Dockins v. Hines, 374 F.3d 935, 939 (10th Cir. 2004) (citing Jackson, 443 U.S. at 319). In other words, it "impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." Jackson, 443 U.S. at 319.

Upon review of the evidence in the light most favorable to the prosecution, the Court finds that sufficient evidence supported the conviction of Unlawful Possession of a Controlled Dangerous

12

Substance. To convict Petitioner of this crime, the State had to prove beyond a reasonable doubt that Petitioner knowingly and intentionally, possessed, the controlled dangerous substance of crack cocaine. See Okla. Stat. tit. 63, § 2-402, et. seq. As noted in the previous section, both deputies testified that Petitioner admitted the drugs were his. Further, Ms. Sanders testified that Petitioner handed her a plastic sandwich bag containing something as they were being pulled over and told her to put it in her pocket. Dkt. # 21, Tr. Trans. Vol. II at 54. It was later determined that the bag contained cocaine. Petitioner's claim that the State did not produce sufficient evidence for his conviction is without merit.

The Court concludes that the evidence was sufficient to support Petitioner's conviction, and that the OCCA's resolution of Petitioner's challenge to the sufficiency of the evidence was not contrary to, or an unreasonable application of, Supreme Court law, 28 U.S.C. § 2254(d)(1), or an unreasonable determination of the facts in light of the evidence presented at trial, 28 U.S.C. § 2254(d)(2). See Dockins, 374 F.3d at 939 (recognizing that the Tenth Circuit has yet to decide whether sufficiency of the evidence on habeas review presents a question of law or fact). Petitioner is not entitled to habeas corpus relief on this claim.

### 3. **Brady violation (ground 3)**

In his third ground for relief, Petitioner complains that the State withheld exculpatory information in violation of his constitutional rights as set forth in Brady v. Maryland, 373 U.S. 83 (1963). Specifically, he contends that the State had made a deal with Ms. Sanders for a lesser punishment in exchange for her testimony against Petitioner. The OCCA denied relief on this issue in its opinion on direct appeal, finding as follows:

> Concerning the allegedly suppressed deal for testimony, the State disclosed to defense counsel and the Court *in camera* that the co-defendant could expect

13

> favorable treatment from the State in exchange for her testimony against Appellant. Defense counsel knew the co-defendant's possible motivations for giving testimony and used that information on cross-examination. There was no formal "deal," and the informal understanding between the co-defendant and the State -- as well as potentially favorable treatment already extended to her -- were fully explored in testimony before the jury. Proposition Two is without merit.

See Dkt. # 19, Ex. 3 at 4.

Petitioner's claim that he was denied access to favorable evidence in violation of his federal constitutional rights is appropriately analyzed under the Due Process Clause of the Fourteenth Amendment. See Pennsylvania v. Ritchie, 480 U.S. 39, 56 (1987). Under Supreme Court precedent, the government is obliged to disclose "evidence in its possession that is both favorable to the accused and material to guilt or punishment." Id. at 57; see also United States v. Bagley, 473 U.S. 667, 675-76 (1985); Brady, 373 U.S. at 87. "[E]vidence is material . . . if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Ritchie, 480 U.S. at 57 (quotation and alteration omitted). A defendant need not show that the withheld records would have "resulted ultimately in [his] acquittal." Kyles v. Whitley, 514 U.S. 419, 434 (1995). "Rather, the question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Strickler v. Greene, 527 U.S. 263, 290 (1999) (quotation omitted). This materiality test applies with equal force to both exculpatory and impeachment evidence. Bagley, 473 U.S. at 676. Impeachment evidence implicates a criminal defendant's due process rights when the reliability of a given witness may be determinative of the defendant's guilt or innocence. Giglio v. United States, 405 U.S. 150, 154 (1972).

14

Petitioner claims that the State suppressed evidence of a plea agreement with key prosecution witness, Ms. Sanders. There is nothing in the record to demonstrate that an agreement with Ms. Sanders was in place at the time of her trial testimony. The mere fact that the witness was subsequently allowed to plead on favorable terms is not evidence that the plea agreement was secretly reached prior to the witness' testimony and improperly withheld from the defense. See United States v. Molina, 75 F.3d 600, 602 (10th Cir. 1996) (citing United States v. Ramirez, 608 F.2d 1261, 1267 (9th Cir. 1979)). Further, the Supreme Court has held that whether a plea or cooperation agreement was "made after or before [a defendant's] trial" was dispositive in determining whether there was a Giglio violation. DeMarco v. United States, 415 U.S. 449, 450 (1974). In this case, Petitioner has failed to demonstrate that an agreement between Ms. Sanders and the State of Oklahoma was in place prior to her testimony, or that the State withheld information regarding the possibility of an agreement after her testimony. Having failed to demonstrate that the OCCA's decision was an unreasonable application of Brady, or any other Supreme Court case, the Court finds that Petitioner is not entitled to habeas corpus relief on his ground three claim.

**4.      Jury instruction regarding corroboration (ground 4)**

In ground four, Petitioner alleges that the trial court gave the jury an obsolete instruction on accomplice testimony. The instruction given to Petitioner's jury erroneously informed the jurors that they "may" eliminate the testimony of an accomplice. See Dkt. # 21-6, O.R. at 120, Instruction No. 33. The correct version of the instruction states that a jury "must" set aside an accomplice's testimony and determine from remaining evidence whether corroboration is sufficient. Because trial

counsel did not object to the instruction, as given, the OCCA reviewed the error for plain error.[5] See

Dkt. # 19, Ex. 3 at 6. Rejecting the claim, the OCCA found as follows:

> The right at issue here is Appellant's right not to suffer criminal conviction upon the uncorroborated testimony of an accomplice. 22 O.S. 2001, § 742. The OUJI-CR(2nd) accomplice instructions, 9-25 through 9-32, protect this right by cautioning juries to scrutinize accomplice testimony for corroboration in the other evidence. Because the record demonstrates that Appellant has not been convicted upon uncorroborated accomplice testimony, the error has not resulted in a miscarriage of justice or a substantial violation of Appellant's rights. *Moss v. State*, 1994 OK CR 80, ¶ 46, 888 P.2d 509, 520. Proposition Four is denied.

Id. at 6.

It is well established that "[a]s a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting Long v. Smith, 663 F.2d 18, 23 (6th Cir. 1981)); see also Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995) ("A state trial conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial."). Petitioner has failed to demonstrate that the incorrect jury instruction on accomplice corroboration resulted in a denial of his fundamental right to a fair trial resulting in a due process violation, or that the OCCA's resolution of his ground four claim was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court. He is not entitled to habeas corpus relief on this claim.

---

[5] The Tenth Circuit has noted that Oklahoma's "plain-error test is rooted in due process." Thornburg v. Mullin, 422 F.3d 1113, 1124 (10th Cir. 2005).

### 5. Ineffective assistance of trial counsel (ground 5)

In ground five, Petitioner contends that his trial counsel was ineffective for: (1) not subjecting the baggies containing the drugs and the gun to forensic testing such as for fingerprints; (2) not attempting DNA testing on the "blunt" found in the car in order to see who, in fact, smoked it; and (3) failing to bifurcate the trial in order to shield Brown's prior drug convictions from the jury during the guilt/innocence phase. Dkt. # 8 at 23. Relying on Black v. State, 21 P.3d 1047, 1070 (Okla. Crim. App. 2001) (citing Strickland v. Washington, 466 U.S. 668 (1984)), the OCCA rejected these claims, finding at follows:

> Applying these principles, Appellant cannot show that most of these alleged omissions were not the result of a sound trial strategy. The absence of fingerprints or Appellant's DNA would have slight impact in the face of his admissions, and the prosecution could readily meet these facts with testimony that prints of DNA are often absent from items of contraband.
> . . .
> Finally, while appellate counsel perceives "absolutely no benefit to combining the stages" of trial, this may be the only reason Appellant is not serving a sentence of life without parole. The jury's first-stage knowledge of the severe mandatory sentence of recidivist drug trafficking may have affected its willingness to convict on that charge. Appellant thus has not shown any unreasonable omissions in counsel's overall trial strategy.

See Dkt. # 19, Ex. 3 at 8-9.

To be entitled to habeas corpus relief on his claim of ineffective assistance of counsel, Petitioner must demonstrate that the OCCA's adjudication of this claim was an unreasonable application of Strickland. Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's

17

conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). A federal habeas court may intercede only if the petitioner can overcome the "doubly deferential" hurdle resulting from application of the standards imposed by § 2254(d) and Strickland. Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011). If Petitioner is unable to show either "deficient performance" or "sufficient prejudice," his claim of ineffective assistance fails. Strickland, 466 U.S. at 700. Thus, it is not always necessary to address both Strickland prongs.

In his habeas petition, Petitioner fails to present any argument or authority which convinces the Court that the OCCA's decision was an unreasonable application of Strickland. Having failed to satisfy his burden under AEDPA, the Court finds that Petitioner is not entitled to relief on the ineffective assistance of counsel arguments presented in his ground five claim.

    **6.**    **Cumulative error (ground 6)**

Next, Petitioner argues that the combined effect of the errors described in grounds one through five rendered his trial fundamentally unfair. See Dkt. # 8, at 25. On direct appeal, the OCCA

concluded that, "[b]ecause we find a harmless error in the district Court's use of an obsolete instruction, no cumulative effect of errors warrants reversal of the conviction or modification of the sentence." Dkt. # 19, Ex. 3 at 9.

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Wood, 207 F.3d 1222, 1237 (10th Cir. 2000) (quotation omitted). Cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003). Cumulative impact of non-errors is not part of the analysis. Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing Rivera, 900 F.2d at 1471). In this case, the Court did not find two or more actual errors. As a result, there is no basis for a cumulative error analysis. Therefore, Petitioner has failed to demonstrate that the OCCA's rejection of this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d).

**C.  Certificate of appealability**

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a

court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

The Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA was debatable amongst jurists of reason. See Dockins, 374 F.3d at 938. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

## *CONCLUSION*

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that the petition for writ of habeas corpus (Dkt. # 2) is **denied**. A separate judgment shall be entered in this matter. A certificate of appealability is **denied**.

**DATED** this 1st day of February, 2013.

*Claire V. Eagan*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE